[Cite as *In re B.J.M.*, 2013-Ohio-2505.]

STATE OF OHIO ) IN THE COURT OF APPEALS OF OHIO
)
JEFFERSON COUNTY ) SS: SEVENTH DISTRICT

IN RE: ) CASE NO. 12 JE 12
)
    B.J.M. )
) JUDGMENT ENTRY
)
)

    For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio, is affirmed. Costs to be taxed against Appellant.

_____

_____

_____
                                     JUDGES.

[Cite as *In re B.J.M.*, 2013-Ohio-2505.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 12 JE 12 |
| | ) | |
| B.J.M. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from the Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio Case No. 2006 PA 00005 |
| JUDGMENT: | Affirmed. |
| APPEARANCES: | |
| For Plaintiff-Appellant: | Atty. Francesca T. Carinci Suite 904-911, Sinclair Building Steubenville, Ohio 43952 |
| For Defendant-Appellee: | Atty. John J. Mascio 325 North Fourth Street Steubenville, Ohio 43952 |

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: June 12, 2013

WAITE, J.

{¶1} Appellant, mother of the minor child, and Appellee, natural father of the minor child, were never married. Appellee was identified as the child's father in an administrative paternity determination and ordered to pay child support. Although there was no visitation order or parenting agreement, both parents and their extended families were liberally involved in the child's life. Mother married in October of 2011 and announced plans to relocate to Virginia. Father, who had enjoyed unlimited access to the child, filed a motion to allocate custody and prevent Mother from leaving the state with the child until a custody determination was made. The juvenile court granted Father's motion, and a custody hearing was held. The court ultimately awarded custody to Father and Mother filed an appeal from that entry. The record reflects that the juvenile court properly applied the statutory requirements for making an initial custody determination and the decision was supported by competent credible evidence. Hence, the judgment of the juvenile court is affirmed.

Factual and Procedural History

{¶2} The court originally took jurisdiction over the juvenile ("M."), who is the subject of Father's motion to allocate custody, pursuant to a January 12, 2006 administrative paternity determination. The court recognized the paternity determination and resulting administrative support order and had these filed with the court. Apart from entering the support order, the court made no allocation of parental rights and the parties did not formally enter into a visitation or parenting agreement at that time. According to both parties, without court involvement they worked out a schedule that benefitted both of them and allowed M. to have time with both parents.

Father's child support obligation was deducted directly from his pay. Various adjustments had been made to the amount of the support order when Father's household income changed between 2006 and 2010. At the time of the custody hearing, he was current on his obligations.

{¶3} On October 12, 2011, Father filed his motion for allocation of parental rights and responsibilities and an *ex parte* motion to prevent Mother from leaving the county with M. Mother opposed the *ex parte* motion, contending that the schedule proposed by the court would cause an undue hardship because she had already cancelled her lease in Jefferson County, enrolled M. in school in Virginia, and arguing that there was no existing order establishing a parenting schedule. The trial court granted Father's *ex parte* motion and established a parenting schedule for the two to follow while proceedings on the motion for custody continued. According to both parties and the court, Mother complied with the terms of the court's interim parenting schedule. It is clear that Mother's proposed move to Norfolk, Virginia with her new husband was the impetus for the motion. Father alleged in his motion, and Mother denied, that although Mother was the custodial and residential parent, M. primarily lived with the paternal grandmother, who attended parent-teacher conferences, purchased clothing, took M. to and from school, and provided other financial support. At the time of the motion, Father was employed and living with his wife and two younger children. At the time, Mother, who also has two other children from another relationship, was unemployed.

{¶4} A hearing on the motion to allocate custody was held before the magistrate on November 30, 2011. The court heard testimony from both parents as well as Mother's husband, the paternal grandparents, maternal aunt, kindergarten teacher, and a family friend from each side. The court noted that M. spent considerable time with the paternal grandmother, who provided child care when both parties were working and the child was not in school. It appears that M. generally slept at Mother's house but would stay with the paternal grandmother, according to M.'s preference and on days when she would take M. to school in the morning. Mother, when she was working, would pick M. up from the child's paternal grandmother after work. Father, who works a great deal, would visit M. at his mother's house after work, approximately three times a week, generally for three hours. M. would also visit Father's house. It appears that M.'s free time was most frequently spent with Mother or with the paternal grandmother.

{¶5} Mother confirmed during the hearing that while she worked M. stayed with the paternal grandmother, but denied that M. spent the majority of time with the grandmother, as described by Father's family witnesses. Father and his witnesses offered some testimony that Mother did not keep a clean house, which was disputed.

{¶6} The court indicated that a major concern was Mother's decision to leave Jefferson County, where M. had lived since birth and had a robust support system, to relocate to Virginia, where M. would only know Mother and her husband. Father and his family emphasized that Mother had dated her husband for little more than a month before they were married. According to Father, he learned of the marriage

and relocation plans via Facebook. According to Mother she and her husband first met seven years before, when he was 14, and the two of them kept in touch continually via telephone, talking once or twice a week. During this seven-year period, he was deployed twice by the U.S. Navy. According to Mother's husband, he had very little contact with anyone, including his own mother, when he was deployed. He claimed his telephone contact with Mother began in 2006, rather than 2004, and was generally by text. The couple met in person at a wedding on August 20, 2011 and began dating on August 27. They got engaged on October 6, 2011 and were married the next day. The court noted Father's concern with the duration of the courtship, the lack of time spent together, and the limited interaction M. had with Mother's new husband due to the newness of their relationship.

{¶7} Mother expressed her concern with Father's general lack of involvement with M. and his reliance on his mother to support M. in his absence. She testified that Father attended only one or two of fifteen T-ball games and did not attend any parent-teacher conferences during M.'s kindergarten year.

{¶8} The December 21, 2011 magistrate's decision explicitly lists the best interest factors that were considered when making the recommendation that Father be allocated custody. On January 4, 2012, Mother filed a timely objection to the magistrate's decision and requested that she be given the option of remaining in Jefferson County and retaining custody because there had been no finding that she was unfit. The trial court overruled her objections, granted Father custody, and

established visitation rights in an April 13, 2012 judgment entry. Mother filed a timely appeal from this order on May 9, 2012.

<u>Argument and Law</u>

<u>Assignment of Error No. 1</u>

THE MAGISTRATE ERRED BY FINDING THAT IT WAS IN THE BEST INTEREST OF THE CHILD TO REALLOCATE PARENTAL RIGHTS AND RESPONSIBILITIES, CHANGING CUSTODY FROM APPELLANT TO THE APPELLEE FOR THE SOLE REASON THE APPELLANT EXPRESSED THE DESIRE TO LEAVE THE STATE.

<u>Assignment of Error No. 2</u>

THE COURT ERRED IN NOT ISSUING A CONDITIONAL ORDER GRANTING THE APPELLANT AN OPPORTUNITY TO MAINTAIN CUSTODY IF SHE WOULD NOT RELOCATE TO VIRGINIA.

**{¶9}** Both of Mother's assignments of error address alleged defects in the process and standard used to allocate custody of M. For this reason they will be considered together. Mother points out that there has been no previous allocation of custody of M. and that she, as an unwed mother, was both the custodial and residential parent by default. Mother concedes that in the absence of a prior custody decree it is not necessary to find change of circumstances has occurred in order to allocate custody. Mother contends, however, that a decision to move out of state does not constitute a change of circumstances if no move has yet taken place. She then argues that because she has not yet moved and triggered a change of

circumstances, the court could not reach the issue of whether a change in custody would be in the best interests of M. Mother also argues that prior to issuing a custody decision, the trial court should have given her the option to retain custody if she decided not to move to Virginia. Mother concludes by stating that relocation cannot be the sole consideration when a court considers either the best interests of the child or the change of circumstances. She urges that the court in this instance erred by relying solely on the proposed relocation as the rationale for granting Father custody.

{¶10} Both parties correctly note that the trial court has issued no prior custody decree and that the mother therefore retained the custodial and residential status conferred on her by statute. R.C. 3109.042. ("An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian.") The second portion of R.C. 3109.042 instructs the court "designating the residential parent and legal custodian of a child" to "treat the mother and father as standing upon an equality." Both parents also recognize that when a court is making an initial custody determination, the decision is to be made "in a manner consistent with the best interest of the [child]." R.C. 3109.04(A)(1). This is not the same standard applied if a court is modifying "a prior decree allocating parental rights and responsibilities for the care of children." R.C. 3109.04(E)(1)(a). If a court is modifying a prior decree, in addition to the best interests of the child the court must first determine whether, "based on facts that have

arisen since the prior decree or that were unknown to the court at the time of the prior decree, * * * a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."  R.C. 3109.04(E)(1)(a).  Under either standard, when determining the best interest of the child, the court is required to consider "all relevant factors" which include, but are not limited to:

> (a)  The wishes of the child's parents regarding the child's care;
>
> (b)  If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d)  The child's adjustment to the child's home, school, and community;
>
> (e)  The mental and physical health of all persons involved in the situation;
>
> (f)  The parent most likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)     Whether either parent has failed to make all child support payments, including all arrearages, that are required of the that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * [involving any] * * * sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; * * * any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)  Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04 (F)(1)(a)-(j). When allocating parental rights and responsibilities, courts are also instructed to "not give preference to a parent because of that parent's financial status or condition." R.C. 3109.04(F)(3). A trial court is given broad discretion to do what is equitable based on the facts and circumstances of each case and in its determination of parental custody rights. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶11}** The Ohio Supreme Court considers custody determinations critical to the life of the child, due to the far greater influence a custodial parent has over the life of the child. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶36. For this reason, the legislature has designed the provisions guiding custody determinations and modifications to ensure the greatest measure of stability practicable under the circumstances. *Id.* at ¶34-36, also *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶28. "The clear intent of [R.C. 3109.04(E)(1)(a)] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a 'better' environment." *Fisher* at ¶34.

**{¶12}** On review, a trial court's custody determination will not be disturbed unless it involves an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). An abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1982). Where a trial court does not abuse its

discretion, its decision will not be reversed if it is supported by competent and credible evidence. *Bechtol*, *supra*, at 23. The Ohio Supreme Court states:

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence[.] * * * The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Internal citation omitted.)

*Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A reviewing court is not entitled to substitute its judgment for the trial court's broad discretion. *Id.* Even if the reviewing court might, given the same facts, reach a different conclusion, the trial court's perception of the testimony takes precedence, within statutory limitations.

**{¶13}** As noted, no prior order regarding custody existed in this instance. Because the trial court was not modifying a custody order, and was instead making an initial determination, no threshold finding concerning a change in circumstances was necessary. Father's decision to seek custody was sufficient to invoke the trial court's jurisdiction in the matter. The magistrate listed the factors the court is required to consider pursuant to R.C. 3109.04(F)(1)(a)-(j). According to the

magistrate, in addition to the concerns of the parents as expressed during the hearing, the court also considered: M.'s interactions with both parties; M.'s adjustment to home, school and the community; the mental and physical health of all involved; the parent most likely to comply with the court-ordered parenting time schedule; support payments; previous convictions for abuse or neglect or sexual misconduct; and whether a parent was establishing a residence out of state. The court did not interview M. for input into the decision due to the child's young age. Violation of a shared parenting order was not an issue before the court. According to the decision, the court found that M. interacted well with both parents and that they were equally capable of parenting M, but the court was concerned about M.'s ability to interact well with "other individuals who may significantly affect the child's best interests." (12/21/11 Mag. Decision.)

{¶14} The court noted that M. had been exclusively raised in Jefferson County and had adjusted to those surroundings. M. had a robust support network on both sides of the family within the county. Although M. had some difficulty with reading, Mother and the paternal grandmother were able to cooperate with the kindergarten teacher and there had been significant improvement. All individuals concerned were in reasonably good health according to the court; both parents appeared willing to comply with court-ordered parenting time schedules; Father was current on support payments; neither parent and none of the individuals in either parent's household had been convicted of abuse, neglect or sexual misconduct, but the court did note that

Mother had a theft conviction. The final factor the court considered was Mother's intention to establish a residence outside the state.

**{¶15}** The trial court adopted and incorporated the magistrate's decision in its entirety, overruled Mother's objections, and named Father the custodial and residential parent. The trial court awarded long distance visitation and attached a schedule allocating holiday time between the parents. As discussed, by law both parents had equal rights to custody of M. and there was no existing presumption in favor of either parent. The record reflects that the court applied the required factors. Nothing in the record reflects a misapplication of the statutory requirements or that the trial court gave undue weight to any individual factor. Under these circumstances, bearing in mind that "knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record," we must defer to the juvenile court's decision. *Miller*, *supra*, at 74. Mother's first assignment of error is overruled. Mother's second assignment of error is without merit because there is no requirement or even a mechanism for a court to issue a conditional custody order and to do so would expressly disregard the clear policy preference for finality and stability in custody determinations. Mother's second assignment of error is likewise overruled.

## Conclusion

**{¶16}** The juvenile court identified and applied the proper statutory law when making an initial custody determination between unmarried parents. The record contained substantial competent, credible, evidence supporting the juvenile court's

decision. The juvenile court was best placed to observe the parties and weigh testimony. The judgment of the juvenile court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.