[Cite as *Barton v. Porter*, 2017-Ohio-1134.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

CONNIE L. BARTON,           )
                                 )
     PLAINTIFF-APPELLANT,     )
                                 )          CASE NO. 16 BE 0016
V.                            )
                                 )          OPINION
PATRICK SHAWN PORTER,    )
                                 )
     DEFENDANT-APPELLEE.    )

| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas, Juvenile Division of Belmont County, Ohio Case No. 09 JH 688 |
|---|---|
| JUDGMENT: | Reversed and Remanded |
| APPEARANCES: | |
| For Plaintiff-Appellant | Attorney Michael J. Shaheen 128 S. Marietta Street P.O. Box 579 St. Clairsville, Ohio 43950 |
| For Defendant-Appellee | Attorney Rebecca Bench 23 Driggs Lane Bridgeport, Ohio 43912 |

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: March 23, 2017

DONOFRIO, P.J.

{¶1} Appellant, Connie B., appeals from a Belmont County Juvenile Court judgment naming appellee, Patrick P., as the residential parent of the parties' minor daughter.

{¶2} C.P. was born to appellant on December 28, 2005. Two years later, it was determined that appellee was C.P.'s father. From that time on, appellee was active in C.P.'s life.

{¶3} In 2009, appellant filed a complaint for child support. The court ordered appellee to pay support in an amount to be determined by the Belmont County Department of Job and Family Services. On January 8, 2010, the court put on an order establishing the amount of support. Appellant subsequently waived any arrearages owed by appellee and informed the Child Support Enforcement Agency that she no longer required their services, in effect waiving child support.

{¶4} The parties cooperated in parenting C.P. without any court orders for many years. During this time, appellant resided in Belmont County and appellee resided in nearby West Virginia. C.P. lived with appellant and generally spent two to three days a week with appellee.

{¶5} In May 2015, appellee learned that appellant was planning on moving to Florida with her fiancé and C.P. Upon learning about appellant's planned move, appellee filed an action in West Virginia to stop appellant's relocation. It was determined that Ohio, not West Virginia had jurisdiction of this matter.

{¶6} On June 8, 2015, appellant filed a petition in the trial court to establish child support. Two days later appellee filed a motion in the trial court to prohibit appellant from relocating to Florida with C.P. He also filed a petition to establish parental rights and responsibilities. In the motion appellee stated the parties had always cooperated as to parenting C.P. so there had been no need for a court order. But he recently learned that appellant was planning to move to Florida with her fiancé and to take C.P. with them. Appellee requested temporary and permanent custody of C.P. or, in the alternative, shared parenting. The trial court entered temporary orders setting up a visitation schedule. Appellant subsequently filed a formal notice of her

intent to relocate to Florida.

{¶7}   A magistrate held a hearing on appellee's motion to establish parental rights and responsibilities and appellant's notice of intent to relocate.  The magistrate heard testimony from both parties and several other witnesses and interviewed C.P. She then entered detailed findings of fact and conclusions of law.  She concluded it was in C.P.'s best interest to name appellee as her residential parent.  The magistrate also set a visitation schedule.  Additionally, the magistrate sustained appellant's motion for child support effective for one month from July 1, 2015, through August 1, 2015.

{¶8}   Appellant filed objections to the magistrate's decision.  She asserted the magistrate's decision was against the weight of the evidence, the court should have appointed a guardian ad litem for C.P., the discovery deadline precluded certain issues from being raised, the child support order was improper, the parties did not waive any potential conflict in writing, and the court erred in finding this to be an allocation of parental rights and responsibilities as opposed to a reallocation.

{¶9}   The trial court overruled appellant's objections and entered a judgment making the magistrate's decision the order of the court.

{¶10}  Appellant filed a timely notice of appeal on April 15, 2016.  She now raises three assignments of error.

{¶11}  Appellant's first assignment of error states:

THE TRIAL COURT ERRED BY CHARACTERIZING THE CASE AS AN "ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES" AS OPPOSED TO A "REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES" AND THEREBY FAILED TO CONSIDER THE FACTORS REQUIRED BY R.C. 3109.04.

{¶12}  Appellant asserts that by operation of statute, she was C.P.'s sole residential parent at the time of her birth.  Additionally, she claims that the trial court confirmed she was C.P.'s legal custodian in a January 6, 2010 judgment entry

dealing with child support. Because appellant argues she was established as the residential parent, she contends the trial court erred in finding this was an initial allocation of parental rights as opposed to a reallocation. She points out that in making an initial allocation of parental rights, the court need only apply the best interest test. On the other hand, in making a reallocation of parental rights, the court must first find a change in circumstances and also find a modification is in the child's best interest. Thus, appellant argues the trial court in this case was required to, and failed to, find a change in circumstances before moving on to consider the best interest of the child.

**{¶13}** Pursuant to R.C. 3109.042(A), "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." Thus, by operation of statute, appellant was C.P.'s sole residential parent and legal custodian from the time of her birth.

**{¶14}** Appellant claims the court made a custody ruling in 2010, when it entered a child support order. But case law indicates otherwise.

**{¶15}** In *In re B.J.M.*, 7th Dist. No. 12 JE 12, 2013-Ohio-2505, mother and father were never married. In an administrative paternity determination, father was identified as the natural father and ordered to pay child support. No visitation schedule or parenting agreement was ever put in place. The child resided with mother but both parents were actively involved in the child's life. After mother married, father learned she planned to move to Virginia with her husband and the child. Father filed a motion to allocate custody and prevent mother from relocating with the child. The trial court granted custody to father and set a visitation schedule. Mother appealed.

**{¶16}** On appeal, we noted that the parties conceded there had been no prior custody decree and mother was the sole custodial parent by operation of statute. *Id.* at ¶ 10. We then noted that because this was an initial custody determination, as opposed to a reallocation, the trial court was not required to find a change in

circumstances but was only required to apply the best interest test. *Id.*

{¶17} Similarly, in *In re S.S.L.S.*, 7th Dist. No. 12 CO 8, 2013-Ohio-3026, mother and father were never married. Mother was the sole custodian of the child by operation of statute. The case was first brought to juvenile court by the Child Support Enforcement Agency, seeking acknowledgement of its administrative paternity finding. The court adopted the paternity determination and child support and ordered father to pay child support to mother. On father's motion, the court granted him companionship with the child. Approximately five months later, father filed a motion for reallocation of parental rights requesting the court grant him custody of the child. The trial court denied father's motion and he appealed.

{¶18} On appeal, we pointed out that the trial court was unclear as to whether it applied the best interest test for initial custody determinations or the change of circumstance/best interest test for custody modifications. *Id.* at ¶ 13-14. We found that the change in circumstances/best interest test was not applicable. *Id.* at ¶ 15. We noted the parents had never been married and there had been no prior adjudication or dispute between the parents regarding custody. *Id.* We pointed out that mother was the sole custodian simply by operation of statute. *Id.* We then found the case presented an original custody determination, not a modification, and therefore the best interest test applied. *Id.* at ¶ 16. Because it was unclear if the trial court applied the correct test, we reversed the trial court's judgment and remanded with instruction for a redetermination of custody under the correct test. *Id.* at ¶ 32.

{¶19} Thus, in cases factually similar to the case at bar, this court has found the facts to dictate an initial allocation of custody, which requires application of the best interest test, as opposed to a reallocation, which requires application of the change in circumstances/best interest test. There is no reason to treat this case any differently.

{¶20} Moreover, it is significant to point out that in a motion to set aside a judgment entry filed June 24, 2015, appellant stated:

Father has never sought parenting time with the child in a court of this

State, and <u>NO PARENTING ORDER HAS EVER BEEN PUT INTO PLACE WHICH TRIGGERS ANY PARENTING SCHEDULE MUCH LESS TRIGGER THE NOTICE OF RELOCATION PROVISIONS.</u>

(Emphasis sic.)

**{¶21}** And in appellant's response to a motion to adopt foreign ex parte order and response to a motion to prohibit relocation of minor child filed June 25, 2015, appellant similarly stated:

<u>NO PARENTING ORDER HAS EVER BEEN PUT INTO PLACE WHICH TRIGGERS ANY PARENTING SCHEDULE MUCH LESS TRIGGERS THE NOTICE OF RELOCATION PROVISIONS or ANY LEGAL BASIS TO PREVENT MOTHER FROM MOVING ANYWHERE SHE SO DESIRES.</u>

(Emphasis sic.)

**{¶22}** These statements in her motions contradict appellant's current position on appeal.

**{¶23}** In sum, the trial court properly treated this case as an initial allocation of parental rights and responsibilities.

**{¶24}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶25}** Appellant's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR.

**{¶26}** Appellant raises four arguments in this assignment of error.

**{¶27}** First, appellant argues the trial court's decision was against the weight of the evidence. She contends the court failed to give proper weight to the statutory factors. Appellant makes several specific arguments regarding this issue that we will

address in context below.

**{¶28}** We will not reverse a trial court's decision regarding the custody of a child which is supported by competent and credible evidence. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus; *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603, 737 N.E.2d 551 (7th Dist.2000). The trial court's discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶29}** In determining the child's best interest either on an original decree allocating parental rights and responsibilities or on a modification of such a decree, the court shall consider all relevant factors, including, but not limited to:

> (a) The wishes of the child's parents regarding the child's care;

> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

> (d) The child's adjustment to the child's home, school, and community;

> (e) The mental and physical health of all persons involved in the situation;

> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

> (g) Whether either parent has failed to make all child support

payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has [ever been convicted of certain offenses or had a child adjudicated abused or neglected];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶30} The trial court made numerous findings as to the statutory factors in rendering its decision as follows.

{¶31} Appellee seeks to be named C.P.'s residential parent, or in the alternative, seeks shared parenting. Appellant is opposed to both. (R.C. 3109.04(F)(1)(a)).

{¶32} The court interviewed C.P. in chambers. She expressed her desire to move to Florida with appellant. Although C.P. was able to express her desires, the court gave little weight to them because it questioned whether she truly understood the difference between visiting Florida and living in Florida. The court noted that her desire to move to Florida was based on starting a new school, seeing dolphins, going to the aquarium, and attending Taylor Swift and Carrie Underwood concerts. (R.C. 3109.04(F)(1)(b)).

{¶33} C.P. has a good relationship with both appellant and appellee. Appellant has been her primary caregiver. Appellee's contact has been more limited. C.P. has four-month-old twin sisters, whom she loves, and is also close to her six-year-old nephew. Appellant's fiancé is very involved with C.P. and they have a close relationship. (R.C. 3109.04(F)(1)(c)).

{¶34} C.P. is well-adjusted to her home, school, and community. She has always attended the same school. She participates in girl scouts and guitar lessons. She attends church regularly with appellee. (R.C. 3109.04(F)(1)(d)).

{¶35} No evidence was presented as to C.P.'s or appellee's health. Appellant is fully recovered from a difficult pregnancy. Appellant's fiancé described his health as "bad," as he has suffered through cancer and a serious car accident that resulted in brain damage that leaves him forgetful. (R.C. 3109.04(F)(1)(e)).

{¶36} Both parents are likely to honor and facilitate visitation. Until June 2015, the parties worked out visitation without a court order. (R.C. 3109.04(F)(1)(f)).

{¶37} There was no child support order in effect at the time of the hearing. (R.C. 3109.04(F)(1)(g)).

{¶38} Neither parent has been convicted of any offense involving a child or domestic violence. Appellant's fiancé was convicted of domestic violence and attempted interference with custody over ten years ago. (R.C. 3109.04(F)(1)(h)).

{¶39} Neither parent has willfully denied the other court-ordered parenting time. But there has never been a court-ordered visitation schedule. (R.C. 3109.04(F)(1)(i)).

{¶40} Appellant has filed an intent to relocate to West Chapel, Florida with C.P. They would live in her fiancé's home. Appellant has no family in Florida, has never lived in Florida, and is not moving for employment purposes. Appellant claims a move to Florida would not interfere with C.P.'s relationship with appellee, but appellant's actions do not support her claim. Appellant's fiancé took C.P. to Florida to buy a house before appellant told appellee she was moving. Appellant took C.P. to tour her new school while this matter was pending and has built up C.P.'s excitement about moving. Appellant has proposed multiple visits but appellee does not have the resources to make multiple yearly trips to Florida. (R.C. 3109.04(F)(1)(j)).

{¶41} In addition to the above best interest factors, the court took several other factors into consideration. It found that C.P. would start a new school

regardless of who it named her residential parent. Additionally, C.P.'s closest relative, other than her parents, is her nephew who is moving to Dublin, Ohio. Moreover, appellee has given thought as to issues he and C.P. may face if he is named residential parent and is prepared to seek counseling for C.P. if needed. Finally, the court considered appellant's testimony that she will not leave if C.P. cannot move to Florida with her.

**{¶42}** The evidence was as follows.

**{¶43}** Appellee testified that he began taking part in C.P.'s life in 2007, when a paternity test established that he was her father. (Tr. 15). When C.P. was two and three years old, appellee and appellant worked different shifts and appellee watched C.P. four days a week while appellant was at work. (Tr. 15-16). When appellee got a new job and his schedule changed, he and appellant worked out a schedule of visitation. (Tr. 16-17). He picked C.P. up from preschool and kept her until appellant was done working. (Tr. 18). Appellee testified that he and appellant had no communication problems at that time and he even took C.P. on vacation. (Tr. 22). From 2012 to 2013, appellee stated that he picked C.P. up either from school or appellant's house three days a week to visit with her. (Tr. 24). Appellee stated that he regularly picked C.P. up from school and took her to guitar lessons, the park, the movies, or just stayed at his house. (Tr. 27). They also attend church together every Sunday. (Tr. 66). In 2015, appellant had a difficult pregnancy with twins. (Tr. 30). During this time, appellee became even more involved in caring for C.P. (Tr. 30-31). He took her to school, picked her up, and did homework with her. (Tr. 31-33). Appellee's girlfriend also helped C.P. with reading and homework. (Tr. 33).

**{¶44}** Appellee stated he has lived in the same house for four years and has been at the same job for ten years. (Tr. 55). His girlfriend Randi has resided with him for the past two-and-a half years and she gets along well with C.P. (Tr. 28). He stated that if the court granted him custody, he would be able to financially support C.P. (Tr. 55).

**{¶45}** Appellee testified that there were no problems until May 2015, when

appellant told him that C.P. was in Florida with appellant's fiancé Don looking at houses and going to Disney World. (Tr. 34). Appellee testified that he was shocked by this news. (Tr. 34). He further testified he was upset appellant let Don take C.P. by himself to Florida and that appellant would not even tell him Don's last name. (Tr. 38). Appellee stated he became concerned after learning that Don had convictions for interference with custody and vehicular manslaughter. (Tr. 63-64).

**{¶46}** Appellee testified that if the court granted his motion, he would assure that C.P. was happy and safe. (Tr. 60). He stated he would get her a counselor if she needed to talk to someone about her feelings. (Tr. 60). Appellee testified he believed it was in C.P.'s best interest to stay in Ohio or West Virginia. (Tr. 66).

**{¶47}** On cross-examination, appellee testified about child support. In 2009, a child support case was initiated. (Tr. 17). But appellee admitted he has never paid child support. (Tr. 71). He stated that appellant agreed he did not have to pay support as long as he kept C.P. on his insurance. (Tr. 70). Appellee also admitted that appellant has been C.P.'s primary caregiver. (Tr. 75). And appellee stated that he has 13 dogs at his house. (Tr. 89). He admitted there was an incident once where C.P. got a flea in her socks. (Tr. 91).

**{¶48}** Appellant's fiancé Don testified next. Don stated that but for one break-up, he and appellant have been in a relationship for six years. (Tr. 105). However, he is not the father of appellant's twins. (Tr. 109). Don characterized his health as "bad." (Tr. 110). He stated that he and appellant are engaged but they do not yet have a wedding date. (Tr. 111). Counsel then went over Don's criminal history. He admitted to convictions for vehicular homicide, disorderly conduct, attempted interference with custody, and complicity to domestic violence. (Tr. 119-123).

**{¶49}** C.P.'s paternal grandmother, Patricia, testified next. Patricia stated she has been available to help with C.P. when needed but she really does not see her very frequently. (Tr. 161-163). She stated that C.P. has cousins who live nearby. (Tr. 163, 166-167). She also testified that appellee takes C.P. to church every Sunday and she sometimes attends with them. (Tr. 165).

{¶50} Appellee's girlfriend Randi was the next witness. Randi stated she has lived with appellee for the past two years and has observed appellee with C.P. (Tr. 186-187). She stated C.P. generally spends two to three days a week with them. (Tr. 187). She stated she spends time with C.P. drawing, riding bikes, and going to the park. (Tr. 191).

{¶51} Appellant's daughter Kayla testified next. Kayla has lived with appellant and C.P. and has a six-year-old son of her own. (Tr. 216, 228). She spoke highly of Don's and appellant's relationship.

{¶52} Appellant testified last. She stated that Don and C.P. are best friends. (Tr. 255). She stated she has never seen Don act violently. (Tr. 255). Appellant agreed as to appellee's testimony regarding the amount of time appellee spends with C.P. (Tr. 259-260). As to her own health, appellant testified as to some health issues she had while she was pregnant in 2015, but stated she is healthy now other than her asthma. (Tr. 261).

{¶53} As to child support, appellant stated she agreed not to pursue child support. (Tr. 264-265). She stated appellee told her he would help as much as he could but he has not really contributed to C.P.'s expenses. (Tr. 265-266). Appellant also agreed that she and appellee never went to court to establish parenting time but they were able to communicate and work it out. (Tr. 266).

{¶54} Appellant testified C.P. loves her baby sisters and interacts with them. (Tr. 267). She also testified that her relationship with C.P. is fabulous. (Tr. 267). She stated they sing and dance, color pictures, play soccer, and talk about their days. (Tr. 267).

{¶55} Appellant stated that she and Don decided to move to West Chapel, Florida, which she described as Belmont County in Florida. (Tr. 270-271). She testified about the new school C.P. would attend, which is only three minutes from her new house. (Tr. 272). Appellant stated that she had already enrolled C.P. in school and C.P. was excited about it. (Tr. 274, 281). Appellant stated that she does not currently work and instead stays with her four-month-old twins. (Tr. 278-279).

Appellant opined it was in C.P.'s best interest to move to Florida with her because there were more opportunities there and she could have a better life there. (Tr. 287).

**{¶56}** Appellant testified that if the court ordered that C.P. could not move to Florida, she would not move. (Tr. 287-288). But appellant stated it would tear her family unit apart. (Tr. 288). She also testified she would help appellee with travel expenses to visit C.P. (Tr. 288).

**{¶57}** On cross-examination, appellant also testified about a brief relationship she had with a man named Joe while she and Don were broken up. (Tr. 311). Appellant stated that Joe moved into her house in the fall of 2014. (Tr. 311). She stated he had a drug problem. (Tr. 311). Joe is the father of appellant's twins.

**{¶58}** Appellant stated that she first told appellee she was moving to Florida in May 2015, when Don took C.P. to Florida to look for houses. (Tr. 317). She also stated that her name is not on the deed of the house in Florida; it is titled only in Don's name. (Tr. 322).

**{¶59}** This evidence demonstrates that both parties love C.P. and would make suitable residential parents. Both parties have some pros and cons in favor of awarding them custody but neither appears to significantly outweigh the other.

**{¶60}** As to appellee, he enjoys a close relationship with C.P. He has been actively involved in C.P.'s life since he learned he was her father in 2007. He regularly takes her to guitar lessons and church. His girlfriend of two-and-a-half years also enjoys a good relationship with C.P. Appellee has a stable job and home and is in good health. Appellee has never paid child support, although there is no arrearage because appellant never pursued child support. He does provide health insurance for C.P. There was testimony about a flea problem with appellee's dogs at one point.

**{¶61}** As to appellant, she too has a close relationship with C.P. She has always been C.P.'s primary caregiver and enjoys many activities with her. Her fiancé also has a close relationship with C.P. Appellant is now in good health after a difficult pregnancy. Appellant has infant twins to whom C.P. is very attached. Appellant

made the decision to move to Florida without consulting with appellee. She has no job or family there and only Don's name is on the deed to the house in Florida.

{¶62} Neither parent has denied parenting time to the other. In fact, the parties cooperated for approximately eight years without a court order. Likewise, neither parent has ever been convicted of any crimes involving children nor have they ever had a child adjudicated abused or neglected.

{¶63} As to appellant's specific arguments, first she claims the court failed to consider that appellee never testified that he wanted full custody of C.P. But appellee filed a motion for custody of C.P. Therefore, he was clearly seeking custody. Additionally, throughout his testimony appellee discussed his plans for if he had full custody of C.P. Therefore, the fact that his counsel never specifically asked him "do you want full custody?" is inconsequential.

{¶64} Appellant next asserts the court failed to consider her wishes and her statement that she would not move to Florida without C.P. and also failed to consider C.P.'s wishes. She asserts the trial court abused its discretion by unfairly weighing her notice of intent to relocate. Appellant is correct here.

{¶65} In its judgment entry, the trial court placed great emphasis on appellant's desire to move to Florida. It noted that she had filed an intent to relocate. It pointed out that appellant has no family in Florida but that appellant and appellee both have family locally (Ohio/West Virginia area). The court noted that appellant was not moving for employment purposes and that neither she nor C.P. had ever lived in Florida. The court went on to observe that C.P. went to Florida with Don to purchase a house before appellant advised appellee she was moving. And it pointed out that appellant had taken C.P. to tour her new school in Florida while this matter was pending. The court found that appellant had built up C.P.'s excitement about moving to Florida to the point that if it granted custody to appellee, he would have to reconcile his relationship with C.P. Finally, the court found that a move to Florida would alienate C.P.'s relationship with appellee.

{¶66} After making all of the above findings, the court then stated it

considered appellant's testimony that she would not leave if C.P. could not move to Florida with her.

**{¶67}** Despite the trial court's statement that it considered appellant's testimony that she would not leave Ohio without C.P., the court failed to weigh the testimony in light of this fact. This was an abuse of discretion.

**{¶68}** All other factors were fairly equal in this case. The court found that C.P. has a good relationship with both parents and both parents are involved in her life. It noted that appellant has been C.P.'s primary caregiver and C.P. wished to remain in appellant's custody. The court found that C.P. is well-adjusted to her home, school, and community. It found that both parents are likely to honor and facilitate court-ordered visitation and that neither parent has ever denied the other parenting time. And it found that neither parent has ever been convicted of an offense involving a child or domestic violence. The court noted that appellant's fiancé had been convicted of domestic violence and attempted interference with custody, but it noted that both convictions were over ten years ago.

**{¶69}** The court also placed emphasis on the fact that appellant filed an intent to relocate to Florida with C.P. The court noted they would live in Don's home. It observed that appellant has no family in Florida, has never lived in Florida, and is not moving for employment purposes. The court found although appellant claimed a move to Florida would not interfere with C.P.'s relationship with appellee, her actions do not support her claim. The court noted that Don took C.P. to Florida to buy a house before appellant told appellee she was moving. And appellant took C.P. to tour her new school while this matter was pending and built up C.P.'s excitement about moving. Additionally, the court found appellee does not have the resources to make multiple yearly trips to Florida to visit C.P.

**{¶70}** In viewing the evidence and the court's findings, it becomes clear that the trial court based its decision in this case on appellant's plan to move to Florida. The court failed to consider that appellant testified unequivocally that she would not move to Florida without C.P. While appellant clearly would like to move to Florida,

she made clear that if the court did not allow her to take C.P. with her, she would not go. At the time of the hearing, appellant still resided in Ohio. Therefore, her plans to move to Florida were only plans. If the court ordered that she could not remove C.P. from Ohio, then appellant would remain in Ohio and the factors the court relied on in naming appellee the residential parent would cease to exist.

{¶71} Moreover, the trial court found that if appellant did not relocate, the parties were encouraged to reconsider a shared parenting plan where appellant would be named the residential parent for school purposes so that C.P. could continue to attend her current school. This order is contradictory to the court's order naming appellee the residential parent.

{¶72} In sum, the court failed to consider appellant's testimony that she would not move to Florida without C.P. The court also improperly relied on appellant living in Florida as support for its judgment awarding custody to appellee. Finally, the court added language in its judgment that is contradictory to its award of custody regarding shared parenting and naming appellant as the residential parent. Given these circumstances, we find that the trial court abused its discretion in granting custody of C.P. to appellee.

{¶73} Third, appellant asserts the court abused its discretion by failing to appoint a guardian ad litem (GAL) for C.P.

{¶74} Neither party in this case requested the court to appoint a GAL for C.P. It is well settled that a party's failure to raise an argument in the trial court waives the issue on appeal. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 34. Because appellant failed to request a GAL for C.P. or otherwise raise this issue in the trial court, she has now waived it on appeal.

{¶75} Fourth, appellant argues the child support order is improper. She asserts the order precludes her from collecting child support beyond a one-month period. She notes that the parties are to have equal time with C.P., yet appellee is the only party who can collect child support. She points out that appellee is employed but she stays home with infant twins.

**{¶76}** Given our resolution of appellant's previous argument, the trial court will also have to revisit the issue of child support on remand.

**{¶77}** Accordingly, appellant's second assignment of error has merit and is sustained.

**{¶78}** Appellant's third assignment of error states:

THE PARTIES, THROUGH COUNSEL, DID NOT WAIVE ANY POTENTIAL CONFLICT IN WRITING PRIOR TO THE COURT HEARING THE CASE.

**{¶79}** In a July 9, 2015 judgment entry, the court stated that counsel was to advise it in writing whether they were waiving any conflict with the magistrate or the court by the next day. The court appears to have done so because the magistrate had acted as a guardian ad litem in a custody case involving appellant's fiancé. The record does not reflect any signed waivers.

**{¶80}** In her final assignment of error, appellant argues such waivers were necessary since much of the testimony revolved around her fiancé and his criminal history.

**{¶81}** It is a general rule that an appellate court will not consider an error that a party could have called, but did not call, to the trial court's attention at a time when the error could have been avoided or corrected. *Anderson v. Holskey*, 7th Dist. No. 08 BE 37, 2009-Ohio-3053, ¶ 18, citing *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus.

**{¶82}** Appellant failed to raise this issue in the trial court when it could have easily been addressed. She did raise it in her objections, but appellant should have raised any issues she had with the magistrate before, or at the very latest at, the custody hearing. At no time during the two-day hearing or the magistrate's interview of C.P. did appellant voice an objection regarding the magistrate or ask for the magistrate to recuse herself. Had she done so prior to, or even at, the hearing, the issue could have been addressed before the magistrate presided over the entire

custody proceeding. By waiting until after the magistrate presided over a two-day hearing to raise this issue, appellant has now waived it on appeal.

**{¶83}** Accordingly, appellant's third assignment of error is waived.

**{¶84}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded. On remand, the trial court shall weigh the best interest factors given the fact that appellant will not relocate without C.P. After doing so, the trial court shall also revisit its child support order.

Waite, J., concurs in judgment only.

Robb, P.J., concurs.